## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| APOTEX, INC. and APOTEX CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-196-SLR |
| | ) | |
| SENJU PHARMACEUTICAL CO., LTD., | ) | |
| KYORIN PHARMACEUTICAL CO., LTD. | ) | |
| and ALLERGAN, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## JOINT MOTION TO DISMISS THE AMENDED COMPLAINT

SEITZ ROSS ARONSTAM & MORITZ LLP
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801

*Of Counsel*:

John M. Majoras
Kevin. D. McDonald
Rosanna K. McCalips
Sara R. Kusiak
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C.  20001

*Counsel for Defendant Kyorin Pharmaceutical
Co., Ltd.*

BAYARD, P.A.
Richard D. Kirk (#922)
Stephen B. Brauerman (#4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899

*Of Counsel:*

William F. Sondericker
Keith D. Nowak
Gerald W. Griffin
CARTER, LEDYARD & MILBURN LLP
2 Wall Street
New York, NY  10005

Derrick K. Takeuchi
GREENBERG, WHITCOMBE & TAKEUCHI, LLP
2515 Hawthorne Boulevard, Suite 450
Torrance, CA  90503

*Counsel for Defendant Senju Pharmaceutical
Co., Ltd.*

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

*Of Counsel*:

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 100
Dallas, TX  75201-6912
sroyall@gibsondunn.com
ajohnson@gibsondunn.com

Jeffrey T. Thomas
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
jtthomas@gibsondunn.com

*Counsel for Defendant Allergan, Inc.*

Dated: September 18, 2014

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

I.      INTRODUCTION ................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDING............................................ 2

III.    SUMMARY OF THE ARGUMENT ............................................................. 3

IV.     FACTUAL SUMMARY ........................................................................... 4

      A.      The 2007 Patent Infringement Litigation............................................ 4

      B.      The Patent Reexamination and Related Infringement Litigation .......... 5

      C.      The Zymaxid ANDA and Related Infringement Litigation................... 5

      D.      The Present Antitrust Litigation........................................................ 6

V.      ARGUMENT........................................................................................ 6

      A.      Legal Standard .............................................................................. 6

      B.      Apotex Fails to Allege a Plausible Relevant Market ........................... 7

            1.      Single-Product Markets Are Inherently Suspect...................... 8

            2.      Apotex's Alleged Single-Product Market Is Implausible....................... 12

VI.     CONCLUSION.................................................................................... 16

## TABLE OF AUTHORITIES

**Page**

CASES

*Allen-Myland, Inc. v. IBM Corp.*,
  33 F.3d 194 (3d Cir. 1994)......................................................................................3, 8

*American Sales Co. v. Astrazeneca AB*,
  No. 10 Civ. 6062, 2011 WL 1465786 (S.D.N.Y. April 14, 2011)....................................12, 13

*Apple Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...........................................................1, 8, 13

*Asahi Glass Co. v. Pentech Pharms., Inc.*,
  289 F. Supp. 2d 986 (N.D. Ill. 2003) ......................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................1, 3, 6, 7

*B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*,
  909 F. Supp. 162 (S.D.N.Y. 1995) ..................................................................9, 10, 11

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
  813 F. Supp. 2d 569, 576 (S.D.N.Y. 2011) .......................................................11, 14

*Bayer Schering Pharma AG v. Watson Pharms., Inc.*,
  No. 07-cv-01472  (D.I. 143) (D. Nev. Mar. 31, 2010) .........................................11, 14

*Belfiore v. New York Times Co.*,
  654 F. Supp. 842 (D. Conn. 1986)......................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................1, 7, 13

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) ..............................................................................14

*Brader v. Allegheny Gen. Hosp.*,
  64 F. 3d 869 (3d Cir. 1995)..................................................................................7

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962).............................................................................................8

*CCPI Inc. v. Am. Premier, Inc.*,
  967 F. Supp. 813 (D. Del. 1997)..........................................................................10

*Colacicco v. Apotex, Inc.*,
   521 F.3d 253 (3d Cir. 2008)...........................................................................................15

*Commercial Data Servers, Inc. v. IBM Corp.*,
   166 F. Supp. 2d 891 (S.D.N.Y. 2001)..............................................................................9

*Diceon Elecs., Inc. v. Calvary Partners, L.P.*,
   772 F. Supp. 859 (D. Del. 1991).....................................................................................15

*F.T.C. v. Tenet Health Care Corp.*,
   186 F.3d 1045 (8th Cir. 1999) ........................................................................................15

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
   No. Civ. A. 01-4254, 2002 WL 31246922 (E.D. Pa. Aug. 9, 2002)................................10

*Global Disc. Travel Servs., LLC v. Trans World Airlines*,
   960 F. Supp. 701 (S.D.N.Y. 1997) ..........................................................................9, 10, 14

*Harrison Aire, Inc. v. Aerostar Int'l*,
   423 F.3d 374 (3d Cir. 2005)............................................................................................14

*HDC Med., Inc. v. Minntech Corp.*,
   474 F.3d 543 (8th Cir. 2007) ..........................................................................................14

*Ill. Tool Works, Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006)............................................................................................................9

*In re Mushroom Direct Purchaser Antirust Litig.*,
   514 F. Supp. 2d 683 (E.D. Pa. 2007) ................................................................................2

*In re Wellbutrin SR/Zyban Antitrust Litig.*,
   281 F. Supp. 2d 751 (E.D. Pa. 2003) ..............................................................................15

*In re Wellbutrin XL Antitrust Litig.*,
   No. Civ. A. 08-2431, 2009 WL 678631 (E.D. Pa. Mar. 13, 2009)....................................2

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
   626 F.3d 1327 (11th Cir. 2010) ......................................................................................14

*Kaiser Found. v. Abbott Labs.*,
   No. CV 02-2443-JFW, 2009 U.S. Dist. LEXIS 107512 (C.D. Cal. Oct. 8, 2009) ..........11

*Linzer Prods. Corp. v. Sekar*,
   499 F. Supp. 2d 540 (S.D.N.Y. 2007)...............................................................................8

*Mathias v. Daily News, L.P.*,
   152 F. Supp. 2d 465 (S.D.N.Y. 2001)................................................................................9

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)...............................................................................15

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)...............................................................................7

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)................................................3, 4, 7, 10, 14, 16

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*,
    812 F. Supp. 387 (S.D.N.Y. 1993) ......................................................................10

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)..............................................................................................7

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ...........................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................7

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001)..........................................................................8, 16

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
    959 F.2d 468 (3d Cir. 1992)...............................................................................15

*Tunis Bros. Co. v. Ford Motor Co.*,
    952 F.2d 715 (3d Cir. 1991)...........................................................................3, 8

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
    964 F.2d 1022 (10th Cir. 1992) ..........................................................................10

*United States v. CIBA Geigy Corp.*,
    508 F. Supp. 1118 (D.N.J. 1976) ........................................................................11

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956)..........................................................................................9, 13

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966).......................................................................................3, 7, 13

## I.      INTRODUCTION

The amended complaint fails to cure fatal deficiencies in the relevant market definition, instead continuing to assert three counts under the Sherman Act based on a market defined so narrowly that it consists solely of the products sold by one of the defendants (Zymar® and Zymaxid®) and their generic equivalents.  The amended complaint, like the original complaint, contains no allegations to indicate that such a narrow market definition is plausible, or that the many alternative treatments for bacterial eye infections are not viable economic substitutes. Apotex makes no such allegations because it cannot do so.  Not only are there many alternative treatments for eye infections, there are also numerous other antibiotic eyedrops.  Indeed, there are multiple antibiotic eyedrops in the same chemical class (quinolones) as gatifloxacin.  Yet the amended complaint addresses none of these obvious rivals, much less explains them away with plausible allegations of fact.  Without such facts, the courts simply will not accept "the counterintuitive claim" that gatifloxacin is "so unique that it suffers *no* actual or potential competitors."  *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008).

Apotex's attempt to plead the market is an exercise in precisely the type of "bare assertions" and "formulaic recitations" of essential elements that *Twombly* and *Iqbal* have declared insufficient.  Apotex has provided as many definitions of a relevant market as it could find in the caselaw and government guidelines and recast them as conclusory allegations about Allergan's product.  Such invocations of antitrust jargon have been repeatedly rejected by the courts, and they will not suffice here.  The amended complaint should therefore be dismissed.[1]

_____

[1] It is unclear whether Count I of the amended complaint purports to state a claim against defendants Senju and Kyorin.  Apotex conceded in its opposition to defendants' motion to dismiss the original complaint that "Apotex's monopolization allegation is directed only to Allergan, and thus Apotex does not contest this portion of defendants' motion."  Opp'n Br. (D.I. 25) at 1.  To the extent Apotex asserts Count I of the Amended Complaint against Senju and

## II.      NATURE AND STAGE OF THE PROCEEDING

On February 16, 2012, Apotex filed a complaint alleging defendants (1) monopolized in violation of Section 2 of the Sherman Act; (2) conspired to monopolize in violation of Section 2 of the Sherman Act; and (3) contracted, combined, or conspired to restrain trade in violation of Section 1 of the Sherman Act.  Apotex alleged defendants willfully maintained a monopoly in the single-product market for gatifloxacin ophthalmic solution by prosecuting and enforcing their patents and introducing and promoting the new product, Zymaxid.  Apotex alleged that, but for defendants' conduct, Apotex would have entered the market with a generic version of Zymar. All defendants moved to dismiss the original complaint under Fed. R. Civ. P. 12(b)(6).  (*See* D.I. 11 & 14.)  Defendants also moved to stay the case pending the Federal Circuit's resolution of the appeal of this Court's dismissal of defendants' patent infringement case against Apotex based on the re-examined '045 patent in *Senju Pharm. Co. v. Apotex Inc.*, Civ. No. 11-1171 (D. Del.) (the "1171 Action").  (*See* D.I. 17.)

On February 7, 2013, this Court stayed this antitrust suit pending resolution of the appeal of the 1171 Action.  (D.I. 32.)  On March 31, 2014, the Federal Circuit issued its ruling in that matter, affirming this Court's dismissal 2-1, but with Judge O'Malley dissenting on the ground that *res judicata* did not bar defendants from brining a claim based on the re-examined '045 patent claims.  *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014).  Pursuant to the

--------------------------------

(continued…)

Kyorin, notwithstanding Apotex's prior concession, it fails to state a claim against these defendants under the established principle that one cannot monopolize a market in which one does not participate, and the monopolization count should be dismissed for that reason as to Senju and Kyorin.  *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, No. Civ. A. 08-2431, 2009 WL 678631, at *6-8 (E.D. Pa. Mar. 13, 2009); *In re Mushroom Direct Purchaser Antirust Litig.*, 514 F. Supp. 2d 683, 699-700 (E.D. Pa. 2007).

schedule ordered by this Court on July 11, 2014, Apotex filed an amended complaint on August 18, 2014 (D.I. 36), asserting the same three causes of action as in the original complaint. The few allegations Apotex has added fail to cure fatal deficiencies, and the Court should dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## III.   SUMMARY OF THE ARGUMENT

1.      The relevant market is an essential element of Sherman Act claims for monopolization and restraint of trade. *E.g.*, *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991). A relevant market consists of all products reasonably interchangeable for the same use, to which consumers can turn as alternatives. *E.g.*, *Allen-Myland, Inc. v. IBM Corp.*, 33 F.3d 194, 206 (3d Cir. 1994).

2.      To properly plead a relevant market, a complaint must contain allegations of fact that render the market plausible. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). A court need accept as true only *facts*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3.      Courts are suspicious of complaints alleging narrow markets based on a single product, which inevitably render defendants monopolists, and require such complaints to allege facts that account for all reasonably interchangeable products. *Queen City Pizza*, 124 F.3d at 436. A complaint that limits a product market to a drug containing a single chemical formula or active ingredient is not sufficient without factual allegations plausibly demonstrating that no alternative products exist. (*See infra* § V.B.1.)

4.      Apotex's relevant market allegations consist of nothing more than bare recitations of the legal definition of a relevant market. The amended complaint's added allegations

3

regarding non-transitory price increases (Am. Compl. ¶ 100), "lower-priced" quinolone eyedrops (*id.* ¶ 100), and "significant numbers" of consumers continuing to purchase Zymar and Zymaxid despite price increases (*id.*) do not cure the fundamental failure to contend with the numerous other reasonably interchangeable alternatives to gatifloxacin eyedrops.  Such allegations have been repeatedly rejected as insufficient to state a claim.  (*See infra* § V.B.2.)  Thus, the amended complaint fails to allege a plausible relevant market and should be dismissed.  *Queen City Pizza*, 124 F.3d at 435.

## IV.    FACTUAL SUMMARY

The Court is familiar with many of the facts that form the basis of Apotex's antitrust allegations, given this Court's role in presiding over the patent infringement litigation.  A brief summary of the factual history as alleged in Apotex's amended antitrust complaint is below.[2]

### A.    The 2007 Patent Infringement Litigation

Senju and Kyorin are co-owners of United States Patent No. 6,333,045 (the "'045 Patent") directed to aqueous liquid pharmaceutical compositions comprising gatifloxacin or its salt and disodium edetate and methods of utilizing such compositions.  Allergan is exclusively licensed to develop, manufacture, use, and commercialize the gatifloxacin ophthalmic solution under the '045 Patent.  It holds approved New Drug Application ("NDA") No. 021493 for a 0.3% gatifloxacin ophthalmic solution (trade name Zymar®), and approved NDA No. 22548 for a 0.5% gatifloxacin ophthalmic solution (trade name Zymaxid®).

In 2007, Apotex filed an Abbreviated New Drug Application ("ANDA") seeking approval for a generic version of Zymar (the "Zymar ANDA").  The Zymar ANDA contained a

---

[2] Except as noted, the "facts" set forth in this section are based upon the allegations in Apotex's amended complaint, which defendants accept as true solely for purposes of this motion.

"Paragraph IV" certification asserting that certain patents listed in the Orange Book for Zymar were invalid. Defendants subsequently sued Apotex for patent infringement. On June 14, 2010, this Court issued an opinion holding that the relevant claims of the '045 Patent were invalid as obvious. On defendants' motion, the Court reopened the record and took additional evidence with respect to one of the invalidated claims. On December 20, 2011, the Court issued a second opinion holding that claim invalid as obvious. The Federal Circuit affirmed on October 5, 2012.

### B.        The Patent Reexamination and Related Infringement Litigation

On February 25, 2011, defendants filed a request for a reexamination of the '045 Patent in the United States Patent and Trademark Office ("USPTO"). On October 25, 2011, the USPTO issued a reexamination certificate for the '045 Patent canceling certain claims, amending one claim, and issuing five new claims. On November 28, 2011, defendants filed the 1171 Action, alleging that Apotex's Zymar ANDA product would infringe the amended and new claims of the reexamined '045 Patent. On September 17, 2012, this Court dismissed the 1171 Action on claim preclusion grounds. In a 2-1 opinion issued March 31, 2014, the Federal Circuit affirmed the dismissal. *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014)

### C.        The Zymaxid ANDA and Related Infringement Litigation

Though not described in the amended complaint, Apotex also filed an ANDA with the FDA for a generic version of Zymaxid, and notified defendants that its ANDA contained a Paragraph IV certification for the reexamined '045 Patent. On February 10, 2012, defendants sued Apotex, alleging, *inter alia*, that Apotex's proposed generic product would infringe Claim 7 of the original '045 Patent, and Claims 6, 12 and 14-16 of the Reexamined '045 Patent. *Senju Pharm. Co. v. Apotex, Inc.*, No. 12-159-SLR (D. Del.) (the "159 Action"). While that case was pending, this Court decided another patent infringement case involving the same patent claims (the "Lupin Action"), holding that the reexamined '045 Patent claims were invalid as obvious.

*See* Op., *Senju Pharm. Co. v. Lupin Ltd.*, No. 11-271-SLR (D. Del. Aug. 9, 2013) (D.I. 190).

The parties to the 159 Action stipulated to the entry of judgment based on collateral estoppel

from the Lupin Action.  *See* Stipulation and Order, *Senju Pharm. Co. v. Apotex, Inc.*, No. 12-

159-SLR (D. Del. Sept. 30, 2013) (D.I. 83).[3]  Defendants appealed the Lupin Action to the

Federal Circuit, which held oral argument on May 7, 2014, and is sub judice.  *Senju Pharm. Co.*

*v. Lupin*, No. 13-1630 (Fed. Cir.).

> D.     **The Present Antitrust Litigation**

On February 16, 2012, Apotex filed the instant case alleging defendants monopolized and

restrained the market for gatifloxacin ophthalmic solution, which Apotex alleges encompasses

only Zymar, Zymaxid, and their generic counterparts.  *See* Am. Comp. ¶ 95 ("The relevant

product market is gatifloxacin ophthalmic solution products for the treatment of bacterial

infections of the eye, including Zymar, Zymaxid, and any therapeutic equivalent thereto.").  No

allegations of fact address the potential substitutes for Zymar and Zymaxid, nor indicate why

they are unavailable to consumers.  Defendants Senju , Kyorin, and Allergan thus bring this

motion to dismiss.

## V.     ARGUMENT

> A.     **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678

(internal citation omitted).  A plaintiff cannot rely on mere "labels and conclusions, and a

---

[3] The Stipulation and Order provides that if the Federal Circuit vacates or reverses the judgment in the Lupin Action, the Court will vacate the stipulated judgment in the 159 Action. Defendants appealed the stipulated adverse judgment to the Federal Circuit, and the Federal Circuit stayed that appeal pending its resolution of the Lupin Action. *See* Order Granting Motion to Stay Appeal, *Senju Pharm. Co. v. Apotex, Inc.*, No. 14-1058 (Fed. Cir. Jan. 8, 2014) (D.I. 24).

formulaic recitation of a cause of action's elements," but rather must include "factual allegations" that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) ("Absent specific factual allegations . . . use of antitrust buzz-words and parroting of general antitrust theories is insufficient to support a Sherman Act violation."). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), as well as "matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### B.     Apotex Fails to Allege A Plausible Relevant Market

To prevail on a claim of monopolization under Section 2 of the Sherman Act or a claim of unreasonable restraint of trade under Section 1 of the Sherman Act, a plaintiff must plead and prove a relevant market. *Grinnell Corp.*, 384 U.S. at 570-71 ("The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (no liability for attempted monopolization absent proof of a relevant market); *Brader v. Allegheny Gen. Hosp.*, 64 F. 3d 869, 877 (3d Cir. 1995) (under Section 2 of the Sherman Act, "the complaint should allege viable relevant markets"); *Queen City Pizza*, 124 F.3d at 442 (to establish a Section 1 violation, plaintiff must prove, *inter alia*, concerted action "that produced anti-competitive effects within the relevant product and geographic markets").

The definition of a product market is "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). Reasonable interchangeability means "one product is roughly equivalent to another for the use to which it is put." *Allen-Myland, Inc.,* 33 F.3d at 206. And, "while there might be some degree of preference for the one over the other, either would work effectively." *Id.* Cross elasticity of demand exists where "the rise in the price of a good within a relevant product market would tend to create a greater demand for other like goods in that market." *Tunis Bros.*, 952 F.2d at 722 (internal citation omitted).

### 1.       Single-Product Markets Are Inherently Suspect

Courts have long been suspicious of relevant market allegations, like those in this case, that include only the products that the alleged monopolist happens to sell—*i.e.*, the "strange red-haired, bearded, one-eyed man-with-a-limp classification." *Belfiore v. N.Y. Times Co.*, 654 F. Supp. 842, 846 (D. Conn. 1986), *aff'd*, 826 F.2d 177 (2d Cir. 1987). Indeed:

> [c]ases in which dismissal on the pleadings is appropriate frequently involve either (1) failed attempts to limit a product market to a single brand, franchise, institution or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way.

*Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001).

Although it is not impossible for a relevant market to be limited to a single product, it is "counterintuitive" and requires specific factual allegations explaining why the product market is so narrow. *Apple, Inc.*, 586 F. Supp. 2d at 1198 (dismissing counterclaim alleging single-product relevant market consisting of Mac operating system); *see also Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 554 (S.D.N.Y. 2007) (dismissing complaint that "offers no support for the proposition that there are no substitutes" for the single product in the alleged relevant market);

8

*Commercial Data Servers, Inc. v. IBM Corp.*, 166 F. Supp. 2d 891, 897 (S.D.N.Y. 2001) (dismissing complaint lacking any "facts explaining why computers other than 'mainframes' should be excluded from the relevant product market").

It is not sufficient simply to allege facts demonstrating that the product at issue has "unique" characteristics differentiating it from other products. "[I]llegal monopoly does not exist merely because the product said to be monopolized differs from others." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 394 (1956); *see also Belfiore*, 654 F. Supp. at 846 ("The natural monopoly every manufacturer has in the production and sale of its own product cannot be the basis for antitrust liability."). While a single product may have certain attributes that make it more attractive to some consumers, such product differentiation alone does not establish a relevant market. *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 482 (S.D.N.Y. 2001) ("[C]ourts have consistently held that a brand name product cannot define a relevant market."). As then Judge Sotomayor wrote when dismissing Sherman Act claims for failure to allege a relevant market, "[a] consumer might choose to purchase a certain product because the manufacturer has spent time and energy differentiating his or her creation from the panoply of products in the market, but at base, Pepsi is one of many sodas, and NBC is just another television network." *Global Disc. Travel Servs., LLC v. Trans World Airlines*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997). Therefore, "[m]erely asserting that a commodity is in some way unique is insufficient to plead a relevant market." *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995).[4]

---

[4] For that reason, the existence of patents covering the product will not suffice to plead a market. *Hologic, Inc.*, 909 F. Supp. at 172; *see also Ill. Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45-46 (2006) (noting "a patent does not necessarily confer market power upon the patentee"). As this Court has held, "[plaintiff] cannot define the relevant market by the products

Rather, to survive a motion to dismiss, a complaint must contain factual allegations

regarding all products that are reasonably interchangeable by consumers for the same purpose:

> Where the plaintiff fails to define its proposed relevant market with
> reference to the rule of reasonable interchangeability and cross-
> elasticity of demand, or alleges a proposed relevant market that
> clearly does not encompass all interchangeable substitute products
> even when all factual inferences are granted in plaintiff's favor, the
> relevant market is legally insufficient and a motion to dismiss may
> be granted.

*Queen City Pizza,* 124 F.3d at 436.  Courts routinely dismiss complaints that fail to allege facts

sufficient to define a plausible relevant market.  *See, e.g., id.*; *TV Commc'ns Network, Inc. v.*

*Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming dismissal of a

complaint that alleged a relevant market limited to one specific television channel); *Fresh Made,*

*Inc. v. Lifeway Foods, Inc.*, No. Civ. A. 01-4254, 2002 WL 31246922, at *5 (E.D. Pa. Aug. 9,

2002) (dismissing for failure to allege that market for specialty Russian dairy products such as

kefir was separate from general market for yogurt or other dairy products); *CCPI Inc. v. Am.*

*Premier, Inc.*, 967 F. Supp. 813, 818 (D. Del. 1997) (dismissing counterclaim where proposed

market was defined in terms of products covered by a patent, without allegations regarding the

interchangeability of other products); *Global Disc. Travel Servs.*, 960 F. Supp. at 705 (dismissing

where relevant market too narrowly defined to include only TWA flights between certain city

pairs); *Hologic, Inc.*, 909 F. Supp. at 172 (dismissing where allegations "do not refer to any

reasonably interchangeable alternatives, nor do they offer an explanation for why they are

defining the relevant product market in such narrow terms"); *Re-Alco Indus., Inc. v. Nat'l Ctr.*

--------

(continued…)

covered by the '551 Patent . . . . [Plaintiff] must refer to any reasonably interchangeable
alternatives . . . ."  *CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 818 (D. Del. 1997).

*for Health Educ., Inc.*, 812 F. Supp. 387, 392 (S.D.N.Y. 1993) (no facts to show why specific health education product was not part of the larger market for health education materials).

   Importantly, courts have long recognized that markets limited to a particular drug or class of drugs are not well-defined without facts to render them plausible.[5]  For example, in *Bayer Schering Pharma AG v. Sandoz, Inc.*, Sandoz alleged a relevant market limited to oral contraceptives also prescribed to treat premenstrual dysphoric disorder ("PMDD"), an extreme form of premenstrual syndrome.  813 F. Supp. 2d 569, 576 (S.D.N.Y. 2011).  Only Bayer's products Yasmin® and Yaz®, and their generic equivalents, met this relevant market definition.  The court dismissed the complaint because Sandoz failed to allege facts to show that "there is no combination of drugs that can serve as a functional substitute" for Yasmin and Yaz.  *Id.* at 577; *see also Bayer Schering Pharma AG v. Watson Pharms., Inc.,* No. 07-cv-01472  (D.I. 143) (D. Nev. Mar. 31, 2010) (granting motion to dismiss claims based on relevant market limited to Yasmin and Yaz) (attached hereto as Ex. A).  Although the molecular combination in Yasmin and Yaz was alleged to be "unique" relative to other birth control pills, the court applied the well-recognized principle that "uniqueness" does not suffice.  *Sandoz*, 813 F. Supp. 2d at 578 (citing *Hologic*, 909 F. Supp. at 172).  The question is whether the products are *economic* substitutes, interchangeable for the same use, not whether they achieve the same result for consumers in a different way.

---

   [5] *See, e.g., Kaiser Found. v. Abbott Labs.*, No. CV 02-2443-JFW (FMOx), 2009 U.S. Dist. LEXIS 107512, at *26 (C.D. Cal. Oct. 8, 2009) (rejecting market limited to Hytrin and its generic copies because it "excluded other alpha-blockers—such as Cardura (generically doxazosin), Minipress (generically prazosin) and Flomax (generically, tamsulosin)"); *Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 996 (N.D. Ill. 2003) (Posner, J., by designation) (stating that it "cannot merely be assumed" that Paxil® does not compete with other antidepressant medications); *United States v. CIBA Geigy Corp.*, 508 F. Supp. 1118, 1155 (D.N.J. 1976) (rejecting market limited to hydrochlorothiazide ("HCT") because "CIBA's HCT products compete in a market composed of all products indicated for the treatment of hypertension").

Similarly, in *American Sales Co. v. AstraZeneca AB*, the court dismissed an antitrust complaint because the allegations fell "well below the threshold to allege a relevant product market." No. 10 Civ. 6062, 2011 WL 1465786, at *4 (S.D.N.Y. Apr. 14, 2011). The plaintiff limited the relevant market to omeprazole magnesium (*i.e.*, Prilosec OTC) to the exclusion of all other methods of treating heartburn because Prilosec OTC had a different formulation (omeprazole magnesium vs. omeprazole) and different indications (frequent heartburn only vs. frequent heartburn plus other stomach problems). *Id.* The court found these allegations to be "limited, vague and conclusory," and dismissed the plaintiff's bald assertion that "no products are interchangeable with Prilosec OTC," as a mere "legal conclusion unsupported by allegations describing Prilosec OTC or the competitive landscape of heartburn-treatment products." *Id.*

Here, Apotex similarly defines the relevant market as a single type of drug sold only by Allergan (until Lupin launched generic Zymaxid on October 3, 2013) without making any attempt to explain why there are no reasonable substitutes. As numerous courts have held, such allegations are insufficient to survive a motion to dismiss.

## 2. Apotex's Alleged Single-Product Market Is Implausible

Apotex's relevant product market allegations span a mere six paragraphs. (Am. Compl. ¶¶ 95-100.) The majority of these allegations are formulaic recitations of the legal test for a relevant market. The few factual allegations contained in the amended complaint are insufficient to render a relevant market limited to gatifloxacin eyedrops plausible.

Paragraph 95 contains Apotex's *ipse dixit* market definition. Paragraph 96 merely contains a "formulaic recitation" of a relevant market as well as an allegation that gatifloxacin has "unique" properties that make it different from other drugs. The statement in Paragraph 96 that gatifloxacin ophthalmic solution "is not reasonably interchangeable with other ophthalmic products that treat bacterial infections" is merely a legal conclusion with no actual facts to

12

support it.  *See Am. Sales Co.*, 2011 WL 1465786 at *3 ("To the extent that plaintiff asserts no products are interchangeable with Prilosec OTC, it is a legal conclusion unsupported by allegations describing Prilosec OTC or the competitive landscape of heartburn-treatment products.").  Similarly, Paragraphs 98 and 99 are not factual allegations supporting the market definition, but rather "formulaic recitations" of the elements Apotex is required to prove to establish the relevant market.  *Twombly*, 550 U.S. at 555.  Paragraph 98 merely restates one of the elements of monopolization, which is the possession of monopoly power (*i.e.*, the power to control prices or exclude competition).  *See Grinnell Corp.*, 384 U.S. at 570-71.  And the statement in Paragraph 99 that defendants could impose a small but significant non-transitory increase in price—language borrowed from the government's antitrust guidelines—is a "conclusory allegation" rejected by the court in *Apple, Inc.* because it "merely restates a commonly used test for market definition without providing any factual basis for the claim."  586 F. Supp. 2d at 1198.

Thus, Paragraphs 97 and 100 are the only paragraphs containing *any* factual allegations related to Apotex's purported market definition.  However these allegations are insufficient to plead a plausible relevant market.  First, Paragraph 97 does nothing more than describe the properties that make gatifloxacin eyedrops in some way distinguishable from other products used to treat bacterial eye infections.  But a relevant market is not defined in terms of *identical* products; rather, it is defined in terms of products that are "reasonably interchangeable by consumers for the same purposes."  *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. at 395 (emphasis added); *see also id.* at 394 ("[I]llegal monopoly does not exist merely because the product said to be monopolized differs from others.").  Indeed, as the cases discussed above make clear, allegations that a product has different characteristics than other potential substitutes

are insufficient to withstand a motion to dismiss.  *See, e.g.*, *Bayer* 813 F. Supp. 2d at 576; *Global Disc. Travel Servs.*, 960 F. Supp. at 705.

The allegations in Paragraph 100 that "significant numbers" of consumers continued to purchase Zymar and Zymaxid despite price increases and the existence of "lower-priced quinolone antibiotic ophthalmic solutions" are also inadequate to plead a plausible relevant market.[6]  First, "[c]ompetitive markets are characterized by both price and quality competition, and a firm's comparatively high price may simply reflect a superior product." *Harrison Aire, Inc. v. Aerostar Int'l*, 423 F.3d 374, 381 (3d Cir. 2005).  Thus, "when dealing with a heterogeneous product or service . . . a reasonable finder of fact cannot infer monopoly power just from higher prices." *Id.* (quoting *Blue Cross & Blue Shield United v. Marshfield Clinic*, 65 F.3d 1406, 1411-12 (7th Cir. 1995)).  Indeed, "[t]he Supreme Court has repeatedly held that a price differential alone is insufficient to infer two separate product markets." *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 547 (8th Cir. 2007).  As one court recently stated, in words highly appropriate here, "[t]he allegations that visco-elastic foam mattresses are more expensive than traditional innerspring mattresses and that visco-elastic foam mattresses have 'unique attributes' are similarly of little help." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338 (11th Cir. 2010).  Instead, the court must look "[m]ost importantly . . . 'to the uses to which the product is put by consumers in general.'"  *Id.* at 1337 (quoting *Queen City Pizza*, 124 F.3d at 438).

But even leaving to one side the reasons for the price differential, the allegation in Paragraph 100 that consumers continued to purchase Zymar and Zymaxid "in significant numbers" despite the price increases misses the point because it fails to address the impact of

---

[6] And moreover, this allegation fails to address the existence of non-quinolone antibiotic eyedrops that also may constrain the price of Zymar® and Zymaxid®, such as Azasite®, Tobrex®, and Genoptic®.

marginal customers. The relevant market inquiry looks not to whether "significant numbers" of customers *would not switch* to a different product in the face of a price increase, but instead to whether a sufficient number of customers *would switch* to a different product in the face of a price increase so as to render the price increase unprofitable. "[E]vidence that the switch to another provider by a small percentage of patients would constrain a price increase, shows that the FTC's proposed market is too narrow." *F.T.C. v. Tenet Health Care Corp.*, 186 F.3d 1045, 1054 (8th Cir. 1999); *see also Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 489 (3d Cir. 1992) ("In most markets, so long as some buyers are knowledgeable and comparison shop, the rest are protected ...."). Thus the amended complaint does not address the cross-elasticity of demand between gatifloxacin eyedrops and the numerous other available products and therefore fails to adequately define the relevant market.

Indeed, a simple search of the FDA's website reveals a multiplicity of product options that treat the same conditions as Zymar and Zymaxid (bacterial infections of the eye):[7]

- Quinolone antibiotics: Ocuflox® (ofloxacin), Ciloxan® (ciprofloxacin), Iquix® (levofloxacin), Quixin® (levofloxacin), Vigamox® (moxifloxacin hydrochloride), Moxeza™ (moxifloxacin hydrochloride), and Besivance® (besifloxacin).[8]

- Non-quinolone antibiotic AzaSite® (azithromycin).[9]

---

[7] These facts are not offered for their truth, as they are not in the amended complaint. Rather, these facts explain why there is <u>nothing</u> alleged in the complaint to justify Apotex's unduly narrow market definition. The Court can take judicial notice of FDA and SEC documents. *See Colacicco v. Apotex, Inc.*, 521 F.3d 253, 273 n.19 (3d Cir. 2008) (taking judicial notice of FDA record available on FDA's website), *vacated on other grounds*, 129 S. Ct. 1578 (2009); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of SEC filings); *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003) (taking judicial notice of FDA's "Listing of New & Generic Drug Approvals 1998-2003" available on FDA's website); *Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 861 (D. Del. 1991) ("Securities and Exchange Commission ('SEC') filings fall within this category of public records that can be judicially noticed.").

[8] *See* FDA Approved Drug Products database, *available at* http://www.accessdata.fda.gov/scripts/cder/drugsatfda/.

- Other treatments including: Tobrex® (tobramycin ophthalmic solution 0.3%) and Genoptic® (gentamicin sulphate ophthalmic solution 0.3%).[10]

None of these obvious alternatives to Zymar and Zymaxid is even addressed, much less explained away, by the amended complaint. This is the paradigmatic case in which the plaintiff "fail[s] even to attempt a plausible explanation as to why a market should be limited in a particular way." *Todd*, 275 F.3d at 200. Apotex's amended complaint fails to plead sufficient factual allegations to show that gatifloxacin ophthalmic solution is altogether immune from competition from these alternative products. As such, the amended complaint proffers an implausibly narrow relevant market and should be dismissed. *Queen City Pizza*, 124 F.3d at 435.

## VI.    CONCLUSION

Because the amended complaint is devoid of facts as to why the multitude of other drugs available to treat bacterial infections are not reasonable substitutes, the alleged market limited to the single product "gatifloxacin ophthalmic solution" is implausible. The amended complaint thus fails to state a claim under Fed. R. Civ. P. 12(b)(6), and all counts should be dismissed.

---

(continued…)

[9] *Id.; see also* B. Pugmire, Pharm.D., BCPS & E. Borzadek Pharm.D., BCPS, *New ophthalmic antibiotics for bacterial conjunctivitis*, Evidence- Based Practice Vol. 11 No. 10: 9-10 (Oct. 2008), *available at* https://mospace.umsystem.edu/xmlui/handle/10355/7382.

[10] *See* Review of Optometry, *Topical Antibiotics* (Aug. 19, 2009), *available at* http://www.revoptom.com/content/s/89/c/14631/; *see also* FDA Approved Drug Products database, *available at* http://www.accessdata.fda.gov/scripts/cder/drugsatfda/; Inspire Pharmaceuticals Inc., Form 10-K (Feb. 25, 2011) at 14, *available at* http://www.sec.gov/Archives/edgar/data/1040416/000119312511047354/d10k.htm (describing the competitive landscape for Azasite® as including Vigamox®, Ciloxan®, Zymar®, Zymaxid®, Ocuflox®, Quixin®, Iquix®, and Besivance®, as well as "several generics used to treat bacterial conjunctivitis, which include erythromycin, gentamicin and tobramycin").

16

Respectfully submitted,

Seitz Ross Aronstam & Moritz LLP | Bayard, P.A.

*/s/ Benjamin J. Schladweiler*
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@seitzross.com
bschladweiler@seitzross.com

*Of Counsel*:

John M. Majoras
Kevin. D. McDonald
Rosanna K. McCalips
Sara R. Kusiak
Jones Day
51 Louisiana Avenue N.W.
Washington, D.C.  20001
(202) 879-3939
jmmajoras@jonesday.com
kdmcdonald@jonesday.com
rkmccalips@jonesday.com
skusiak@jonesday.com

*Counsel for Defendant Kyorin Pharmaceutical Co., Ltd.*

*/s/ Stephen B. Brauerman*
Richard D. Kirk (#922)
Stephen B. Brauerman (#4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com

*Of Counsel:*

William F. Sondericker
Keith D. Nowak
Gerald W. Griffin
Carter, Ledyard & Milburn LLP
2 Wall Street
New York, NY  10005
(212) 732-3200
sondericker@clm.com
nowak@clm.com
griffin@clm.com

Derrick K. Takeuchi
Greenberg, Whitcombe & Takeuchi, LLP
2515 Hawthorne Boulevard, Suite 450
Torrance, CA  90503
(310) 540-2000
dtakeuchi@gwtllp.com

*Counsel for Defendant Senju Pharmaceutical Co., Ltd.*

17

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

*/s/ Regina S.E. Murphy*
Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com

*Of Counsel*:

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 100
Dallas, TX  75201-6912
(214) 698-3100
sroyall@gibsondunn.com
ajohnson@gibsondunn.com

Jeffrey T. Thomas
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
(949) 451-3800
jtthomas@gibsondunn.com

*Counsel for Defendant Allergan, Inc.*


Dated:  September 18, 2014

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on September 18, 2014, 2014, a true copy

of the foregoing *Defendants' Opening Brief in Support of Their Joint Motion to Dismiss the*

*Amended Complaint* was served via electronic mail upon the following counsel of record:

Francis J. Murphy , Jr.
MURPHY, SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, DE  19805
fmurphy@msllaw.com

*Counsel for Plaintiffs Apotex Inc. and*
*Apotex Corp.*

Keith D. Parr
David B. Abramowitz
Michael J. Gaertner
Scott B. Feder
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL  60606
kparr@lockelord.com
dabramowitz@lockelord.com
mgaertner@lockelord.com
sfeder@lockelord.com

Alan B. Clement
LOCKE LORD LLP
Three World Financial Center
New York, NY  10281-2101
aclement@lockelord.com

Patrick C. Gallagher Ph.D.
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, IL  60603-3433
pcgallagher@duanemorris.com

*Counsel for Plaintiffs Apotex Inc. and*
*Apotex Corp.*

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)