**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| APOTEX, INC. and APOTEX CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-196-SLR |
| | ) | |
| SENJU PHARMACEUTICAL CO., LTD., | ) | |
| KYORIN PHARMACEUTICAL CO., LTD. | ) | |
| and ALLERGAN, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT
OF THEIR JOINT MOTION TO DISMISS**

David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE  19801
dross@seitzross.com
bschladweiler@seitzross.com

*Of Counsel*:

John M. Majoras
Kevin. D. McDonald
Rosanna K. McCalips
Sara R. Kusiak
JONES DAY
51 Louisiana Avenue N.W.
Washington, D.C.  20001

*Counsel for Defendant Kyorin
Pharmaceutical Co., Ltd.*

Richard D. Kirk (#922)
Stephen B. Brauerman (#4952)
BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com

*Of Counsel:*

William F. Sondericker
Keith D. Nowak
Gerald W. Griffin
CARTER, LEDYARD & MILBURN LLP
2 Wall Street
New York, NY  10005

Derrick K. Takeuchi
GREENBERG, WHITCOMBE & TAKEUCHI, LLP
21515 Hawthorne Boulevard, Suite 450
Torrance, CA  90503

*Counsel for Defendant Senju Pharmaceutical
Co. Ltd.*

Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com

*Of Counsel*:

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201-6912

Jeffrey T. Thomas
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412

*Counsel for Defendant Allergan, Inc.*


Dated:  November 13, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF ABBREVIATIONS ........................................................................................... iv

I.      Introduction ............................................................................................................... 1

II.     Argument ................................................................................................................... 3

A.      Failure To Allege A Plausible Relevant Market Is Grounds For Dismissal ..................... 3

B.      Alleging That The Relevant Product Is Unique Or Otherwise Different From
        Alternative Products Is Insufficient To State A Claim ..................................................... 4

C.      Apotex's "Elasticity" Argument Will Not Save The Complaint ...................................... 7

D.      Plaintiff's Attempt To Rewrite The Case Law Will Not Save The Complaint ................ 8

III.    Conclusion ............................................................................................................... 10

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE

*Am. Sales Co. v. AstraZeneca AB*,
   No. 10 Civ. 6062 PKC, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) ......................5, 8, 9, 10

*Apple Inc. v. Psystar Corp.*,
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) ..........................................................................1, 2, 4

*Asahi Glass Co. v. Pentech Pharms., Inc.*,
   289 F. Supp 2d 986 (N.D. Ill. 2003) ...................................................................................4

*B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*,
   909 F. Supp. 162 (S.D.N.Y. 1995) .....................................................................................2

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
   813 F. Supp. 2d 569 (S.D.N.Y. 2011)..............................................................................8, 9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................3, 4

*Conley v. Gibson*,
   355 U.S. 41 (1957)...............................................................................................................4

*F.T.C. v. Tenet Health Care Corp.*,
   186 F.3d 1045 (8th Cir. 1999) .....................................................................................2, 7, 8

*F.T.C. v. Actavis*,
   133 S. Ct. 2223 (2013)........................................................................................................10

*Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*,
   386 F. 3d 485 (2d Cir. 2004)............................................................................................9, 10

*Global Disc. Travel Servs., LLC v. Trans World Airlines*,
   960 F. Supp. 701 (S.D.N.Y. 1997) .....................................................................................5

*HDC Med., Inc. v. Minntech Corp.*,
   474 F.3d 543 (8th Cir. 2007) ...............................................................................................7

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   363 F. Supp. 2d 514 (E.D.N.Y. 2005) .................................................................................9

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   467 F. Supp. 2d 74 (D.D.C. 2006) .......................................................................................9

*In re Terazosin Hydrochloride Antitrust Litig.*,
   352 F. Supp. 2d 1279 (S.D. Fla. 2005) ................................................................................9

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ...........................................................................3, 7

*MCM Partners Inc. v. Andrews-Bartlett & Associates, Inc.*,
  62 F. 3d 967 (7th Cir. 1995) ..................................................................................4

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F. 3d 430, 441 (3d. Cir. 1997).............................................................. passim

*Shionogi Pharma, Inc. v. Mylan Pharms. Inc.*,
  Civ. Action No. 10-1077, 2011 WL 2550835 (D. Del. June 10, 2011).........1, 4, 5, 6

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001)...............................................................................1, 4

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
  959 F.2d 468 (3d Cir. 1992)...............................................................................2, 8

*United States v. E.I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956)................................................................................................4

## TABLE OF ABBREVIATIONS

D. Br.                    Defendants' Opening Brief in Support of Their
                          Joint Motion to Dismiss The Amended Complaint (D.I. 38)


Opp.                      Apotex's Answering Brief in Opposition to Defendants
                          Joint Motion to Dismiss (D.I. 41)

## I.       INTRODUCTION

Apotex does not dispute that the product market alleged in its complaint—gatifloxacin ophthalmic solution—is a single type of antibiotic eye drop for the treatment of eye infections. Nor does Apotex dispute that there are numerous other treatments for eye infections, including other antibiotic eye drops.  Indeed, Apotex does not dispute that there are other available eye drops *within the identical class of antibiotics* (*i.e.*, quinolones) as gatifloxacin.  *See* D. Br. at 15-16.  Because the complaint contains no allegation of fact addressing the interchangeability of these alternative treatments, it offers no plausible explanation for the "counterintuitive" inference that this single type of eye drop "is so unique that it suffers *no* actual or potential competitors." *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) (original emphasis). These deficiencies mandate dismissal.

Contrary to Apotex's assertion that "the Third Circuit ha[s] warned against dismissing antitrust claims based on a supposed failure to properly allege a relevant product market," (Opp. at 8), the Third Circuit's seminal decision in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, *affirmed* the dismissal of a complaint for failure to allege a plausible relevant market.  124 F. 3d 430, 441 (3d. Cir. 1997).  In this Court, there is no doubt that "[c]ourts will dismiss an antitrust claim where the complaint fails to plead the relevant product market.  *Queen City Pizza, Inc.* …." *Shionogi Pharma, Inc. v. Mylan Pharms. Inc.*, Civ. Action No. 10-1077, 2011 WL 2550835, at *5 (D. Del. June 10, 2011).  And that is especially true where, as here, the complaint "fail[s] even to attempt a plausible explanation as to why a market should be limited in a particular way." *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (citing *Queen City Pizza*).

As explained in the opening brief, the amended complaint contains the same formulaic recitations and conclusory allegations that have been found to be insufficient to allege a relevant market in other cases—including markets limited to a single drug in its branded and generic

forms.  Apotex responds by pointing to its allegations that gatifloxacin eye drops contain two ingredients not found in other eye drops that render gatifloxacin "unique" relative to other eye drops.  Opp. at 6.  But simply "asserting that a commodity is in some way unique is insufficient to plead a relevant market."  *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995).  Apotex confuses product differentiation with interchangeability:  just because Coke has its "unique" secret formula does not mean that it does not compete with Pepsi.

Apotex also relies on its assertion of low cross elasticity of demand between Zymar® and Zymaxid® and all other antibiotic eye drops.  But the courts have repeatedly held that such a "conclusory" allegation "merely restates a commonly used test for market definition without providing any factual basis for the claim."  *Apple Inc.*, 586 F. Supp. 2d at 1198.  Apotex misunderstands the concept of *cross*-elasticity, moreover, because its allegations focus solely on the sales of Zymar® and Zymaxid®.  Am. Compl. ¶ 100.  The fact that "significant numbers" of consumers allegedly continued to use Zymar® and Zymaxid® after price increases says nothing about the constraining effect on price of the marginal customers who did switch to other products.  *See F.T.C. v. Tenet Health Care Corp.*, 186 F.3d 1045, 1054 (8th Cir. 1999) ("[E]vidence that the switch to another provider by a small percentage of patients would constrain a price increase, shows that the FTC's proposed market is too narrow."); *see also Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 489 (3d Cir. 1992) ("In most markets, so long as some buyers are knowledgeable and comparison shop, the rest are protected ….").  Apotex's argument devolves to no more than an assertion that Zymaxid's price is higher than some of its rivals and that some customers continued to use Zymar® and Zymaxid® despite price increases.  But the courts are clear that price differences alone do not delineate

2

relevant markets, and the fact that some consumers have a strong preference for a particular product does not mean that product is its own relevant market for antitrust purposes.

In short, the law will not allow Apotex to ignore the functional interchangeability of Zymar® and Zymaxid® with their numerous rivals.  Allegations of "unique" properties and conclusory allegations of low cross-elasticity of demand without alleging facts to support that conclusion will not suffice.  Here, where there are numerous other antibiotic eye drops, including some in the very same antibiotic class, *see* D. Br. at 15-16, there is no reason to infer that Zymar® and Zymaxid® face absolutely no competition.  The complaint makes no effort to plead facts to make such an inference plausible and thus should be dismissed.

## II.   ARGUMENT

Apotex relies on only two allegations concerning the relevant market: the claim that "the gatifloxacin ophthalmic solution market is inelastic," and the claim that only Zymar® and Zymaxid® "contain both disodium edetate and benzalkonium chloride."  Opp. at 6.  Neither is sufficient to render the alleged relevant market plausible.

### A.   Failure To Allege A Plausible Relevant Market Is Grounds For Dismissal

*Queen City Pizza* makes clear that even though the relevant market inquiry is fact intensive, that does not excuse a plaintiff from *pleading* enough facts to render the relevant market alleged in the complaint plausible.  124 F.3d at 433.  As the Eleventh Circuit has noted, accepting Apotex's argument would "absolve [a plaintiff] of the responsibility under [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)] to plead facts 'plausibly suggesting' the relevant submarket's composition."  *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338

(11th Cir. 2010).[1]  And where, as here, the alleged market is implausibly narrow, the complaint

must "attempt a plausible explanation," *Todd*, 275 F.3d at 200, and contain facts to justify the

"counterintuitive" inference that a given product "is so unique that it suffers *no* actual or

potential competitors," *Apple Inc.*, 586 F. Supp. 2d at 1198 (original emphasis).  These principles

have been applied repeatedly both in this Court and elsewhere to dismiss complaints alleging that

a single drug and its generic copies constitute a separate market.  *E.g.*, *Shionogi Pharma, Inc.*,

2011 WL 2550835, at *5; *see* D. Br. at 11-12 & n.5.[2]

> ### B.     Alleging That The Relevant Product Is Unique Or Otherwise Different From Alternative Products Is Insufficient To State A Claim

The amended complaint states that Defendants' products are the only "approved

quinolone antibiotic" eye drops that contain disodium edetate and benzalkonium chloride as

"preservatives and permeability enhancers."  Am. Compl. ¶ 97.  The amended complaint also

alleges that gatifloxacin has "specific antibacterial properties" and a "unique spectrum of

treatment."  *Id.* ¶ 96.  But the courts have resoundingly rejected the notion that product

differences alone can define a market.  "[I]llegal monopoly does not exist merely because the

product said to be monopolized differs from others." *United States v. E.I. du Pont de Nemours*

---

[1] Though Apotex's arguments based on "notice" pleading standards cannot survive the holding of *Queen City Pizza*, there is no doubt that after *Twombly*, the facts to render the alleged market plausible will not be assumed:  "In other words, 'notice pleading' now requires 'notice' of the facts necessary to raise an inference that the defendant has stated a [claim]." *Shionogi Pharma, Inc.*, 2011 WL 2550835, at *3 (rejecting single drug market).

[2] Apotex seizes on Judge Posner's statement in *Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp 2d 986 (N.D. Ill. 2003) that the failure to allege a plausible relevant market is a "detail" and "would not be itself basis for granting a motion to dismiss."  Opp. at 12.  But Judge Posner was applying Seventh Circuit law in 2003, *MCM Partners Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F. 3d 967 (7th Cir. 1995), which relied on the "no set of facts" pleading standard from *Conley v. Gibson*, 355 U.S. 41 (1957).  That pleading standard was retired in *Twombly* and is no longer the law.  550 U.S. at 563.  In any event, *Queen City Pizza* made it clear—even prior to *Twombly*—that in this Circuit failure to allege a plausible relevant market is not a mere "detail" but rather is itself an adequate basis for dismissing a complaint.

& *Co.*, 351 U.S. 377, 394 (1956); *see* D. Br. at 9.  Apotex makes no attempt to explain why these

different ingredients matter in the marketplace, much less matter so much that a patient who

cannot obtain Zymar® or Zymaxid® has no choice but to leave his or her eyes untreated.

Thus, there is nothing in the complaint to distinguish these features of the alleged product

from the standard product differentiation that sellers practice in nearly every market.

Then-Judge Sotomayor explained when granting a similar motion to dismiss that "[a] consumer

might choose to purchase a certain product because the manufacturer has spent time and energy

differentiating his or her creation from the panoply of products in the market, but at base, Pepsi

is one of many sodas, and NBC is just another television network."  *Global Disc. Travel Servs.,*

*LLC v. Trans World Airlines*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997).

This Court made the point in *Shionogi Pharma, Inc.*  There, the complaint alleged that the

market should be limited to

> the market for treatment with orally disintegrating prednisolone
> tablets.  Products within this market are recognized in the industry
> generally as a separate and distinct product market for those
> patients, such as children and the elderly, in need of treatment with
> prednisolone in an easy to ingest formulation.

2011 WL 2550835, at *6.  Finding these allegations "wholly conclusory," the court granted the

motion to dismiss:  "These allegations are not supported by facts showing a product market of

reasonably interchangeable commodities from the perspective of the consumer, as required by

*Queen City Pizza* …."  *Id.  Shionogi Pharma, Inc.* also refutes the assertion of Apotex's counsel

that "according to the allegations in Apotex's complaint, doctors do not view gatifloxacin

ophthalmic solutions as interchangeable with other antibiotic eye drops."  Opp. at 16.  This

assertion, for which the Apotex brief tellingly provides no citation, appears nowhere in the

complaint.  If it did, it would be equally conclusory as the assertion in *Shionogi* that the "industry"

regarded the alleged product as having no substitutes.  *See also Am. Sales Co. v. AstraZeneca AB*,

No. 10 Civ. 6062 PKC, 2011 WL 1465786, at *3 (S.D.N.Y. Apr. 14, 2011) ("To the extent that plaintiff asserts no products are interchangeable with Prilosec OTC, it is a legal conclusion unsupported by allegations describing Prilosec OTC or the competitive landscape of [alternative] products.").[3]

Contrary to Apotex's mischaracterization (Opp. at 13), Defendants do not argue that a single drug product can *never* constitute a relevant market. Rather, our argument is that when there are other products that treat the same conditions, and it is not obvious why those other products are not reasonably interchangeable with the drug alleged to constitute the relevant market, plaintiffs are required to plead additional facts to render the relevant market limited to a single type of drug plausible. Here, Apotex fails to allege sufficient facts to render a relevant market limited to gatifloxacin eye drops plausible given the numerous other antibiotic eye drops available.[4] Thus the complaint fails to nudge the relevant market allegation across the line from possible to plausible and should be dismissed.

---

[3] *Shionogi Pharma, Inc.* also provides an example of the kinds of allegations that are missing from this complaint. After dismissal, the plaintiff filed an amended counterclaim containing thirty paragraphs of factual allegations explaining why orally disintegrating prednisolone tablets were not reasonably interchangeable with other forms of prednisolone and thus constituted their own market. *See* Am. Countercl. at 16-26, ¶¶ 37-67 (Ex. A). The allegations specifically addressed the other potential alternative formulations to the alleged drug, including non-disintegrating tablets, inhaled formulations, and topical formulations. For example, non-disintegrating tablets that must be swallowed are not an option for young children, the elderly, and those with conditions that impede swallowing (dysphagia). *Id.* ¶ 48. Inhaled forms "are not viable substitutes . . . because they do not provide the same or sufficient doses of the drug into the bloodstream." *Id.* ¶ 57. And topical forms "contain insufficient dosing and do not treat the same internal symptoms, often lung and bronchial indications." *Id.* ¶ 58. Apotex's complaint contains no such allegations, nor could it, since in this case, unlike *Shionogi*, there are numerous treatments in the same antibiotic class (quinolones) employing the same formulation (eye drops) as gatifloxacin.

[4] As detailed in our opening brief, a simple Internet search reveals numerous other products to treat eye infections. D. Br. at 15-16 (listing several other quinolone antibiotics, including Ocuflox® (ofloxacin), Ciloxan® (ciprofloxacin), Iquix®/Quixin® (levofloxacin),

**C.      Apotex's "Elasticity" Argument Will Not Save The Complaint**

Apotex's elasticity argument is based on the fact that "significant numbers" of consumers continued to purchase Zymar® and Zymaxid® despite price increases.  Am. Compl. ¶ 100.  But there are no allegations in the complaint regarding the price of Zymar® as compared to Zymaxid®, the price of Zymar® and Zymaxid® as compared to other antibiotic eye drops, or the buying patterns of consumers of Zymar®, Zymaxid®, and other rival products in the face of price increases for Zymar® and Zymaxid®.  Conspicuously absent from Apotex's complaint is any fact to demonstrate the effects Zymar® and Zymaxid® price increases had on sales of any other rival product (the actual test of cross-elasticity).  Apotex's  allegations are insufficient for two reasons.

First, Apotex gains nothing from its allegation that Zymaxid® is more expensive than some other quinolone eye drops.  *HDC Med., Inc. v. Minntech Corp*., 474 F.3d 543, 547 (8th Cir. 2007) ("The Supreme Court has repeatedly held that a price differential alone is insufficient to infer two separate markets."); *see F.T.C. v. Tenet Health Care Corp*., 186 F.3d at 1054 ("Thus, the fact that Cape Girardeau hospitals are higher priced than Poplar Bluff hospitals does not necessarily mean they are not competitors.").  As one court stated, in words highly appropriate here, "[t]he allegations that visco-elastic foam mattresses are more expensive than traditional innerspring mattresses and that visco-elastic foam mattresses have 'unique attributes' are similarly of little help."  *Tempur-Pedic*, 626 F.3d at 1338.

Second, Apotex's argument betrays a fundamental misunderstanding of the concept of cross-elasticity of demand, which "measures the responsiveness of the demand for one product to

-----

(continued…)

Vigamox®/Moxeza™ (moxifloxacin), and Besivance® (besifloxacin), and the non-quinolone antibiotics AzaSite® (azithromycin), Tobrex® (tobramycin), and Genoptic® (gentamycin sulphate)).

changes in the price of a different product." *Queen City Pizza*, 124 F.3d at 438 n.6 (quotation

omitted).  Apotex focuses not on the price increase of one product and the quantity demanded of

another, but only on the price and quantity of Zymaxid® itself.  Opp. at 6 ("Allergan successfully

switched consumers from Zymar to Zymaxid without losing significant sales despite Zymaxid's

increased price.").   The fact that some consumers—even "significant numbers" of consumers—

continued to purchase Zymaxid® says nothing about the ability of marginal customers who did

switch products to restrain Allergan's ability to increase the price of Zymar® and Zymaxid®.  *See*

*F.T.C. v. Tenet Health Care Corp.*, 186 F.3d at 1054 ("[E]vidence that the switch to another

provider by a small percentage of patients would constrain a price increase, shows that the FTC's

proposed market is too narrow."); *see also Town Sound & Custom Tops, Inc.*, 959 F.2d at 489

("In most markets, so long as some buyers are knowledgeable and comparison shop, the rest are

protected ….").

### D.    Plaintiff's Attempt To Rewrite The Case Law Will Not Save The Complaint

Apotex cannot distinguish the cases defendants cite in which similarly sparse and

conclusory relevant market allegations were dismissed.  Apotex attempts to distinguish *Bayer*

*Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569 (S.D.N.Y. 2011) (*Bayer Schering*),

because (1) the market rejected in *Bayer* was "narrower" because it included branded drugs only,

and (2) there were no allegations "that [the] proposed market was inelastic."  Opp. at 11.  Both

statements are false.  *See Bayer Schering*, 813 F. Supp. 2d at 576 ("In addition to Yasmin and

Yaz, two generic drugs—Barr's Ocella and Teva's Giambi— … make up the relevant market.");

Sandoz's First Amended Answer, Affirmative Defenses, and Counterclaims ¶ 48, 2010 WL

2208928 (S.D.N.Y. Apr. 15, 2010) (alleging that "even at supracompetitive prices, there is no

cross-elasticity of demand between Yasmin ®/YAZ® and … potential substitutes").  Apotex also

misreads *American Sales Co. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786

(S.D.N.Y. Apr. 14, 2011), as holding that the plaintiff did not allege "unique product characteristics" or an "inelastic" market.  Opp. at 11.  But that complaint clearly alleged that no other substitute was "bioequivalent [or] interchangeable," *Am. Sales*, 2011 WL 1465786,  at *3, and that the product was priced "at supra-competitive levels," Class Action Compl. and Jury Demand ¶ 4, 2010 WL 3299115 (S.D.N.Y. Aug. 12, 2010).  What the court actually said was that there were no allegations "of any product characteristics or evidence of consumer buying patterns *that limit Prilosec OTC's interchangeability of use or the cross-elasticity of demand*." *Am. Sales*, 2011 WL 1465786, at *3 (emphasis added).  Apotex has done no more.

Nor do the other cases cited by Apotex support its position.  *See* Opp. at 9-13.  All were decided on summary judgment or after a full trial where evidence of specific facts demonstrated that a given market could be supported.[5]  Indeed, if the facts are sufficiently unusual, the market might—contrary to Apotex's preferred market—be limited to generic drugs, excluding their branded equivalents.  *See Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F. 3d 485, 496-501 (2d Cir. 2004) (*Geneva Pharms.*).  But the importance of such specific facts is the point of this motion.  None of these cases stands for the proposition that the facts necessary to justify a narrow market may be omitted from the complaint and then simply assumed to exist.  The principles those courts applied demonstrate the opposite, which is why both *Bayer Schering* (813

---

[5] *See, e.g., In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 522-23 (E.D.N.Y. 2005) (summary judgment; dicta); *In re Terazosin Hydrochloride Antitrust Litig.*, 352 F. Supp. 2d 1279, 1319 n.40 (S.D. Fla. 2005) (summary judgment; dicta in footnote);  *In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d 74, 82 (D.D.C. 2006) (full trial).

F. Supp. 2d at 575) and *American Sales* (2011 WL 1465786, at *2) relied on *Geneva Pharms.* in dismissing the complaints before them.[6]

## III.   CONCLUSION

Apotex's failure to allege facts tending to make a relevant market limited to gatifloxacin eye drops plausible is fatal to its complaint.  No fact suggests, much less explains, why consumers of Zymar® and Zymaxid® cannot turn to the numerous alternative products that treat the same condition (eye infections) using the same medicine (a quinolone antibiotic) in the same formulation (eye drops).  Apotex's complaint should be dismissed with prejudice.

---

[6] Apotex's reliance on *F.T.C. v. Actavis*, 133 S. Ct. 2223 (2013) is mysterious, because the case did not turn on the definition of the relevant product market, nor was the issue even raised by the defendant.

Respectfully submitted,

SEITZ ROSS ARONSTAM & MORITZ LLP          BAYARD, P.A.

*/s/ Benjamin J. Schladweiler*                */s/ Stephen B. Brauerman*
David E. Ross (#5228)                     Richard D. Kirk (#922)
Benjamin J. Schladweiler (#4601)          Stephen B. Brauerman (#4952)
100 S. West Street, Suite 400             222 Delaware Avenue, Suite 900
Wilmington, DE  19801                     P.O. Box 25130
(302) 576-1600                            Wilmington, DE  19899
dross@seitzross.com                       (302) 655-5000
bschladweiler@seitzross.com               rkirk@bayardlaw.com
                                          sbrauerman@bayardlaw.com
*Of Counsel*:
                                          *Of Counsel:*
John M. Majoras
Kevin. D. McDonald                        William F. Sondericker
Rosanna K. McCalips                       Keith D. Nowak
Sara R. Kusiak                            Gerald W. Griffin
JONES DAY                                 CARTER, LEDYARD & MILBURN LLP
51 Louisiana Avenue N.W.                  2 Wall Street
Washington, D.C.  20001                   New York, NY  10005
(202) 879-3939                            (212) 732-3200
jmmajoras@jonesday.com                    sondericker@clm.com
kdmcdonald@jonesday.com                   nowak@clm.com
rkmccalips@jonesday.com                   griffin@clm.com
skusiak@jonesday.com
                                          Derrick K. Takeuchi
*Counsel for Defendant Kyorin Pharmaceutical*   GREENBERG, WHITCOMBE & TAKEUCHI, LLP
*Co., Ltd.*                               21515 Hawthorne Boulevard, Suite 450
                                          Torrance, CA  90503
                                          (310) 540-2000
                                          dtakeuchi@gwtllp.com

                                          *Counsel for Defendant Senju Pharmaceutical*
                                          *Co. Ltd.*

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

_/s/ Regina S.E. Murphy_
Jack B. Blumenfeld (#1014)
Regina S.E. Murphy (#5648)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com

*Of Counsel*:

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201-6912
sroyall@gibsondunn.com
ajohnson@gibsondunn.com

Jeffrey T. Thomas
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
jtthomas@gibsondunn.com

*Counsel for Defendant Allergan, Inc.*

Dated:  November 13, 2014

12

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on November 13, 2014, a true copy of the

foregoing ***Defendants' Reply Brief in Further Support of Their Joint Motion to Dismiss*** was

served via electronic mail upon the following counsel of record:

Francis J. Murphy , Jr.
MURPHY & LANDON, P.A.
1011 Centre Road, Suite 210
Wilmington, DE  19805
fmurphy@msllaw.com

*Counsel for Plaintiffs Apotex Inc. and*
*Apotex Corp.*

Alan B. Clement
LOCKE LORD LLP
Three World Financial Center
New York, NY  10281-2101
aclement@lockelord.com

Keith D. Parr
Michael J. Gaertner
Scott B. Feder
David B. Abramowitz
Andy J. Miller
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL  60606
kparr@lockelord.com
mgaertner@lockelord.com
sfeder@lockelord.com
dabramowitz@lockelord.com
amiller@lockelord.com

*Counsel for Plaintiffs Apotex Inc. and*
*Apotex Corp.*

 */s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)